## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee,

v.

## Barisha DILL, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 15, 2014.

Filed Jan. 13, 2015.

Elliott Tolan, Philadelphia, for appellant.

James T. Moughan, Philadelphia, for appellee.

BEFORE: BENDER, P.J.E., BOWES, J., PANELLA, J., DONOHUE, J., SHOGAN, J., ALLEN, J., LAZARUS, J., WECHT, J., and STABILE, J.

OPINION BY WECHT, J.:

Barisha Dill ("Appellant") appeals the trial court's December 19, 2012 order. That order affirmed an arbitration panel's unanimous decision in favor of State Farm Mutual Automobile Insurance Company ("State Farm"). Appellant has waived both of the claims that she raises in this appeal. Accordingly, we affirm.

On March 14, 2003, Appellant, who was eleven years-old at the time, was being driven to school by George Foster ("Foster"). On the way to school, Foster's vehicle was struck by a vehicle being operated by Melissa Marshall ("Marshall"). Appellant was injured in the accident. The learned trial court detailed the procedural events that followed the accident as follows:

On March 5, 2005, [Appellant] filed a negligence action against [Marshall,] the other driver involved in the accident. After suit was commenced, the carrier for [Marshall] referred the case to Attorney Kevin McNulty (McNulty). McNulty entered his appearance and filed an answer on April 8, 2005. On April 27, 2005, McNulty withdrew his appearance and Daniel Lewbart, Esquire entered his appearance. Thereafter, neither McNulty nor any attorney in his office had further involvement in the third party action. Attorney Lewbart defended [Marshall] in that case. In 2008, the negligence action settled in [Appellant's] favor for the policy limits. Other than the brief period after the referral and before the transfer, McNulty claimed he never worked on the case and had no recollection of the matter. Following the resolution of the third party claim, [Appellant] filed an underinsured claim (UIM) against the insurance carrier for the car in which she was a passenger, [State Farm]. Per the terms of the applicable insurance policy, the matter proceeded to arbitration. The arbitration panel consisted of the following members: Alan Feldman, Esquire, appointed by [Appellant's counsel]; [and] Kevin McNulty, Esquire, appointed by State Farm. The parties could not agree to a third neutral arbitrator. On April 12, 2012, Judge John W. Herron appointed Craig Lord, Esquire, [as] the neutral arbitrator. Following a hearing, the arbitration panel rendered a unanimous award in favor of State Farm. [Appellant] filed this Motion to Strike and/or Set Aside Arbitrator's Award, asserting that she did not receive a fair

hearing because of McNulty's prior involvement in the third party matter. Upon review of the briefs and after oral argument, [the trial court] denied [Appellant's] motion.

Trial Court Opinion ("T.C.O."), 3/7/2013, at 1–2 (footnote omitted; punctuation modified).

Although judgment had not yet been entered, Appellant filed a notice of appeal on October 31, 2012. By a December 6, 2012 order, this Court directed Appellant to praecipe the trial court to enter judgment. Upon praecipe, the trial court entered judgment on December 19, 2012. The trial court did not direct Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and no statement was filed. Nonetheless, on March 7, 2013, the trial court filed an opinion pursuant to Pa. R.A.P. 1925(a).

Before this Court en banc,[1] Appellant raises two issues for our consideration:

1. Whether the trial court erred in dismissing Appellant's petition to strike the award entered with regard to the arbitration of her underinsured motorist claim where the defense arbitrator had previously served as counsel for the tortfeasor in a related 3rd party litigation?

2. Whether the trial court erred in dismissing Appellant's petition to strike the award entered with regard to the arbitration of her underinsured motorist claim where the arbitrators considered inadmissible evidence of collateral source payments and other

inadmissible materials in reaching their award?

Brief for Appellant at 3.

▇▇▇ Before we can address the merits of Appellant's claims, we first must determine whether Appellant properly has preserved those claims in the proceedings below. "It is axiomatic that '[i]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.'" *Lockley v. CSX Transp. Inc.*, 66 A.3d 322, 325 (Pa.Super.) *appeal denied,* 621 Pa. 667, 74 A.3d 127 (2013) (quoting *Summers v. Summers,* 35 A.3d 786, 790 (Pa.Super.2012) (citation omitted)). On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated. *Tindall v. Friedman,* 970 A.2d 1159, 1174 (Pa.Super.2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Id.* (quoting *Thompson v. Thompson,* 963 A.2d 474, 475–76 (Pa.Super.2008) (citation omitted)).

▇▇▇ In her first issue, Appellant maintains that the trial court erred in denying Appellant's petition to strike the arbitration panel's decision because Attorney McNulty's impartiality as an arbitrator was compromised due to his previous representation of Marshall in Appellant's ini-

1. On December 18, 2013, we issued an unpublished memorandum, in which both of Appellant's claims were deemed to have been waived. Judge Shogan issued a dissenting memorandum. Appellant timely sought *en banc* reargument. On April 14, 2014, this Court entered an order granting Appellant's petition for reargument.

tial negligence lawsuit. We have reviewed the arbitration hearing transcript and have discovered that Appellant never objected to Attorney McNulty's participation as an arbitrator at any point during that proceeding. Our waiver rules apply to arbitration hearings with the same force as they do to any other adversarial proceeding. Indeed, "[a] party may waive objection to the composition of the arbitration panel if after learning of the grounds for objection that party nevertheless participates in the hearing and withholds objection until the panel renders a decision." *Donegal Ins. Co. v. Longo*, 415 Pa.Super. 628, 610 A.2d 466, 468 (1992) (citing *Abramovich v. Penna. Liquor Control Bd.*, 490 Pa. 290, 416 A.2d 474, 476 n. 3 (1980); *Rosenbaum v. Drucker*, 346 Pa. 434, 31 A.2d 117, 118 (1943)).

Appellant does not address waiver substantively in either her principal brief or in her reply brief. Instead, Appellant simply rejects State Farm's waiver argument as "idiocy." Reply Brief for Appellant at 1. Appellant twice asserts that her attack on Attorney McNulty's partiality is "non-waivable." Brief for Appellant at 10 n. 3; Reply Brief for Appellant at 1. But saying it does not make it so. Appellant offers no case, statute, or rule of court that stands for the proposition that a challenge to the partiality of an arbitrator can never be waived. Nor have we found such authority. In fact, *Longo* clearly holds that such a claim is waivable.

Nonetheless, directing our attention to the Rules of Civil Procedure and the Rules of Judicial Conduct, Appellant maintains that Attorney McNulty's alleged partiality is "presumed where the arbitrator formerly participated in the other proceedings relating to the case under scrutiny." Reply Brief for Appellant at 1 (emphasis removed). Appellant notes that Pennsylvania Rule of Civil Procedure 1302 compels an arbitrator to "immediately withdraw" if that arbitrator "would be disqualified for any reason that would disqualify a judge under the Code of Judicial Conduct." Pa.R.C.P. 1302(e).[2] Canons 2.11(a)(1) and (a)(2)(b) of the Code of Judicial Conduct require a judge to disqualify himself when the judge has "personal knowledge of facts that are in dispute in the proceeding," and when the judge has acted "as a lawyer in the proceeding." Again, however, Appellant cites no case law or statutes in support of the notion that these principles affect a court's subject matter jurisdiction such that her challenge to Attorney McNulty's partiality would be non-waivable. It bears repeating that, even if Attorney McNulty had an independent obligation to voluntarily disqualify himself, such an obligation does not remove the onus from Appellant to object to the composition of the panel. Indeed, *Longo* imposes upon a participant the obligation to object to the composition of the arbitration panel at the earliest possible time, notwithstanding any obligation by any other participant, arbitrators included. Appellant simply failed to do so.[3]

**2.** We express no opinion on whether the arbitration that occurred in this case should be classified as statutory arbitration, 42 Pa.C.S. § 7301–7320.

**3.** We note that, pursuant to 42 Pa.C.S. § 7362(d), waiver of a defect in the arbitration process may be excused in the event that "fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, in-

equitable or unconscionable award." *Id.* However, in light of *Longo*, we cannot conclude that the instant circumstances warrant a conclusion that Attorney McNulty's failure to remove himself as an arbitrator constitutes an irregularity pursuant to subsection 7362(d). *Longo*, a long-standing precedent that neither party asks us to overrule, requires a party to object to the composition of an arbitration panel at the earliest possible junc-

■ Although Appellant's argument regarding waiver consists primarily of labels and assertions unsupported by law, we still confront the knowledge requirement implicit in the above-quoted language from *Longo*. That is, a challenge to the partiality or composition of an arbitration panel can only be waived if the party failed to object after having learned of the grounds for the objection. *Longo*, 610 A.2d at 468. In other words, Appellant's failure to object would not be waived if Appellant did not know that Attorney McNulty allegedly was compromised at the time of the arbitration hearing, or until after the decision was rendered.

Having reviewed the certified record, we conclude that Appellant had the requisite knowledge. The crux of Appellant's claim is that Attorney McNulty was partial as an arbitrator because he represented Marshall, albeit briefly, in the initial negligence action and, therefore, could not partially serve as an arbitrator in the derivative UIM action. In March 2005, Appellant filed the negligence action. Attorney McNulty drafted, signed, and filed the answer to Appellant's complaint. On the first page of the answer, Attorney McNulty certified that he had served the answer on all parties, which, of course, included Appellant. *See* Answer, 4/11/2005, at 1. Thus, Appellant had actual knowledge from the inception of her lawsuits that Attorney McNulty had participated in the case, and, more specifically, had represented her opponent in the matter by filing the answer. Consequently, notwithstanding Appellant's belief that the concept of waiver is nothing more than "idiocy," [4] her failure to object to Attorney McNulty's participation as an arbitrator results in waiver of her claim on appeal.

■ In her second issue, Appellant contends that the arbitration panel considered a "wide array of improper and inadmissible" evidence during the hearing. Brief for Appellant at 12. For example, Appellant argues that the panel improperly received evidence regarding the amount of the payment that Appellant received from Marshall's and Foster's insurance carriers, information pertaining to the status of Appellant's original attorney's license to practice law, and "a host of self-serving inadmissible letters designed to buttress a claim that [Appellant] had somehow spoliated her own MRI files." Brief for Appellant at 12. However, Appellant did not object to the admission of these pieces of evidence at the arbitration hearing, the first available opportunity. Failure to do so necessarily results in waiver of that claim. *See Tindall*, supra.

Judgment affirmed.

---

ture. To conclude here that Attorney McNulty's failure to recuse himself, if he was indeed required to do so, excuses Appellant's waiver, we necessarily would have to overrule or effectively disavow *Longo*. Indeed, to do so would carve a new path in Pennsylvania law that would enable arbitration participants to avoid objecting to the composition of the arbitration panel until after the panel renders an award. Such a result not only contravenes our established case law, but also encourages verdict shopping. An arbitration participant would be able to wait until the verdict is rendered before deciding whether to contest the qualifications of a person to sit as an arbitrator, and could do so while comfortable in the knowledge that waiver of the issue is not at risk, and that no challenge need be made unless and until the participant suffers an adverse award. Such a result is untenable, whether viewed under our current case law (*i.e.*, *Longo*) or under our policy of preventing verdict shopping.

4. Appellant is far from the first to assail the wisdom of a result compelled by law. *See* Charles Dickens, *Oliver Twist* 333 (Dover Thrift ed., Dover Publications 2002) (1838) (" 'If the law supposes that,' said Mr. Bumble, squeezing his hat emphatically in both hands, 'the law is a ass—a idiot.' ").

President Judge Emeritus BENDER and Judges PANELLA and STABILE join the opinion.

Judge DONOHUE files a concurring opinion.

Judge BOWES files a concurring and dissenting opinion.

Judge SHOGAN files a concurring and dissenting opinion in which Judges ALLEN and LAZARUS join.

CONCURRING OPINION BY DONOHUE, J.:

I join the Majority opinion, as I agree that this Court may not consider claims of error that were not raised before the arbitration tribunal at a time when the errors could have been corrected and any prejudice mitigated. *Tindall v. Friedman*, 970 A.2d 1159, 1174 (Pa.Super.2009); *Donegal Ins. Co. v. Longo*, 415 Pa.Super. 628, 610 A.2d 466, 468 (1992). For the reasons set forth in the Majority opinion, the Appellant waived the claims now presented on appeal.

I write separately to disavow any suggestion that but for our finding of waiver, I would conclude that the arbitrator selected by State Farm (Kevin McNulty, Esq.) was disqualified to serve as an arbitrator in this case. Pursuant to section 7305 of the Uniform Arbitration Act, if "the agreement to arbitrate prescribes a method of appointment of arbitrators, the prescribed method will be followed." 42 Pa.C.S.A. § 7305. In this case, the agreement specifies that "each party shall select a **competent** arbitrator," and that these two "shall select a **competent and impartial** third arbitrator." State Farm Mutual Automobile Insurance Policy, at 20 (emphasis added). The issue presented here, then, is one of contract interpretation, namely what constitutes a "competent arbitrator" under this agreement, and how (if any) the

description of the neutral third arbitrator as both "competent **and impartial**" shapes this determination. But for the waiver of this issue, this Court would have been tasked to glean the mutual intentions of the parties regarding the phrase "competent arbitrator" to decide whether Attorney McNulty's prior involvement in the third party action disqualified his participation as a "competent arbitrator" in this case.

This issue appears to be one of first impression for Pennsylvania appellate courts. In *Longo*, this Court ruled that an arbitrator's undisclosed attorney-client relationship with one of the parties rendered him unqualified to serve as an arbitrator, but the agreement in that case regarding the selection of arbitrators did not include any of the "competent" and "impartial" language at issue here. *Longo*, 610 A.2d at 467–68 ("[E]ach party will select an arbitrator" and these "two arbitrators will select a third."). In *Sheehan v. Nationwide Ins. Co.*, 779 A.2d 582 (Pa.Super.), *appeal denied*, 568 Pa. 619, 792 A.2d 1254 (2001), this Court held that the individual selected to be the third arbitrator was competent to serve in that role even though he had been an associate in a law firm that had represented one of the parties 23 years previously. *Id.* at 585. Again, however, the relevant language in *Sheehan* differed from that presented here, as the agreement there provided only that each party would select "an arbitrator" and that those two would "select a third competent arbitrator." *Id.* at 584.

The contract language in the present case, pursuant to which the parties each selected a "competent arbitrator" and those two arbitrators selected a "competent **and impartial**" third arbitrator, suggests some distinction between competence and impartiality. In other words, the parties here may have agreed that only

the third arbitrator (the neutral) needed to be entirely free of any prior associations or other hint of partiality. If so, the competence of the two arbitrators selected by the parties would be judged by some lesser standard (e.g., a more general ability to determine fairly the merits of the controversy before them). I note, for instance, that the Uniform Arbitration Act repeatedly distinguishes between ordinary arbitrators (like McNulty) and those appointed to act as "neutrals." *See, e.g.,* 42 Pa.C.S.A. § 7314(a)(ii) ("[T]he court shall vacate an award where: ... there was evident partiality by an arbitrator **appointed as a neutral** or corruption or misconduct in any of the arbitrators prejudicing the rights of any party.") (emphasis added); *id.* at § 7307(a)(5) ("If, during the course of the hearing, an arbitrator for any reason ceases to act, the remaining arbitrator or arbitrators **appointed to act as neutrals** may continue with the hearing and determine the controversy.") (emphasis added).

Because the issue presented is one of contract interpretation, I disagree with the view of the Dissent that Rule 1302 of the Pennsylvania Rules of Civil Procedure has any application here. Per Rule 1301 and 42 Pa.C.S.A. § 7361, Rule 1302 governs only in connection with compulsory court arbitration of civil cases below a dollar amount fixed by local rule. Pa.R.C.P. 1301; 42 Pa.C.S.A. § 7361. In compulsory arbitration, by rule (Rule 1302(b)) arbitrators are appointed from a list of members of the bar, and their qualifications are thus also set by rule (Rule 1302(e)). In this case, in significant contrast, the arbitrators were selected in accordance with the agreed-upon terms of the insurance policy (as described hereinabove), and the qualifications of the arbitrators selected must be determined by those same terms. Given

that the issue was not preserved for review, the interpretation of the insurance contract must await another case.

## CONCURRING AND DISSENTING OPINION BY BOWES, J.:

I agree with Judge Shogan, and thus disagree with the learned majority, that waiver is inappropriate on the facts herein. There is no indication that Ms. Dill, who was eleven years old at the time of the accident, or her present counsel, who did not represent her in the underlying third-party case, had actual knowledge of Attorney Kevin McNulty's role in that litigation at the time of the arbitration. Furthermore, I am reluctant to penalize Ms. Dill for failing to recall or discover Mr. McNulty's earlier participation, especially when Mr. McNulty maintained he had no memory of the case and obviously did not check for possible conflicts.

Absent waiver, I agree with Judge Donohue that this appeal requires construction of the insurance policy language detailing the selection of UIM/UM arbitrators. The State Farm insurance policy herein provides:

> Each party shall select a competent arbitrator. These two shall select a competent and impartial third arbitrator. If unable to agree on a third one within 30 days, either party may request a judge of a court of record in the county in which the arbitration is pending to select a third one. The written decision of any two arbitrators shall be binding on each party.

State Farm Policy at 20. A "competent arbitrator" is undefined, although it appears that one need not be impartial to be competent.[1] I also concur with Judge Do-

---

1. This distinction is not an aberration. The Rules of Professional Conduct place different

constraints on subsequent representation by an attorney who formerly acted as a neutral

nohue that Pa.R.C.P. 1302, governing compulsory arbitration, has no application herein. Consequently, its incorporation of the Code of Judicial Conduct disqualification rules does not inform our review. Hence, I disagree with Judge Shogan's premise that Mr. McNulty's earlier representation of the third-party tortfeasor automatically disqualifies him from serving as an arbitrator in this UIM proceeding. *See* Canon 3(C)(1)(b).[2]

I do believe, however, that the word "competent" as used in the policy, connotes more than knowledge, skill and expertise. In the legal context, competence involves qualification to be a party, witness, or in this case, an arbitrator.[3] There may be situations where a skilled attorney is incompetent to serve as an arbitrator due to a conflict of interest, present or prior involvement with the parties, a pecuniary benefit in the outcome, or outside knowledge of the disputed facts. His or her failure to disclose the circumstances or

withdraw may constitute an irregularity within the meaning of 42 Pa.C.S. § 7341.[4] Partiality alone, however, does not render a partisan arbitrator in a multi-member panel incompetent to serve.

Even assuming that Attorney McNulty was not competent within the meaning of the insurance policy, and that his failure to disclose his prior involvement or knowledge of the underlying facts constituted an irregularity within the meaning of 42 Pa. C.S. § 7341, in my view, the setting aside of the award is still not warranted in this case.[5] Our scope of review is extremely narrow. *See McKenna v. Sosso*, 745 A.2d 1, 4 (Pa.Super.1999), citing *Chervenak, Keane & Co., Inc. v. Hotel Rittenhouse Assocs., Inc.*, 328 Pa.Super. 357, 477 A.2d 482, 485 (1984) (review "limited to whether the appellant was deprived of a hearing or whether 'fraud, misconduct, corruption or other irregularity' tainted the award").

This Court recently reaffirmed in *F.J. Busse Co. v. Zipporah, L.P.*, 879 A.2d 809,

---

arbitrator and one who was "selected as a partisan of party in a multi-member arbitration panel." *See* Pa.R.Prof.C. 1.12(a) and (d).

2. The trial court concluded that after Attorney McNulty withdrew his appearance and Daniel Lewbart, Esquire, entered his appearance, "neither McNaulty (sic) nor any attorney in his office had further involvement in the third party action." Trial Court Opinion, 3/7/13, at 1. However, contrary to the trial court's representation, the docket reflects that Attorney Lewbart was Attorney McNulty's partner in the firm of Gerlamo McNulty Divis Lewbart.

3. In addition to mental condition and immaturity, a person may be rendered incompetent to be a witness by virtue of another's assertion of a privilege. *See* 42 Pa.C.S. §§ 5925, 5926, 5927 (*spouses incompetent to testify* against each other in civil cases with certain exceptions). *See also* the Dead Man's Act, 20 Pa.C.S. § 2209 (defining circumstances when witnesses are incompetent to testify against a decedent). Pa.R.E. 605 renders a presiding judge incompetent to testify as a witness at the trial or other proceeding. Pa.R.E. 606(a)

renders a juror incompetent "to testify as a witness before the other jurors at the trial."

4. As counsel for the third-party tortfeasor in the underlying case, Attorney McNulty may have been privy to facts regarding Ms. Dill's injuries and treatment, as well as the amounts of available coverages. Generally, UIM arbitrators are not informed of amounts received in the prior third-party or UIM cases, nor the applicable UM/UIM coverages. They are asked to evaluate the injury, and after the fact, the award is molded to reflect payments already made and available coverages. Herein State Farm apprised the arbitrators of the amounts Ms. Dill previously received, as well as the limits of available UIM coverage. However, Ms. Dill did not object. Thus, I agree with the Majority that this issue is waived.

5. The Majority examined Attorney McNulty's failure to remove himself to determine whether it was an irregularity that would excuse Ms. Dill's waiver within the meaning of 42 Pa.C.S. § 7362(d). Majority Opinion, at 886 n. 2.

811 (Pa.Super.2005), that the appellant "bears the burden to establish both the underlying irregularity **and** the resulting inequity by 'clear, precise and indubitable evidence.'" (emphasis supplied). In this context, "irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself[,]" *id.*, and the irregularity may appear in the conduct of either the arbitrators or the parties. *Paugh v. Nationwide Ins. Co.,* 278 Pa.Super. 108, 420 A.2d 452, 458 (1980); *see also Nicholson Supply Co. v. Pennsy Supply, Inc.,* 321 Pa.Super. 475, 468 A.2d 808 (1983) (vacating arbitration award where plaintiff submitted evidence ex parte). However, the appellant must also demonstrate by "'clear, precise, and indubitable' evidence" the "resulting inequity," *Chervenak,* supra at 485, i.e., that the irregularity resulted in "**the rendition of an unjust, inequitable or unconscionable award.**" 42 Pa.C.S. § 7341 (emphasis supplied) ("The award of an arbitrator in a nonjudicial arbitration ... is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.").

Ms. Dill did not clearly demonstrate that Attorney McNulty's prior involvement in the third-party case tainted the process and rendered this award unjust, unconscionable, or inequitable. In fact, she makes no argument at all relative to this issue. My review of the record revealed that Ms. Dill underwent physical therapy for lower back and left shoulder pain attributed to strain and sprain twice per week for four months, and then once per week for two additional months. N.T., 6/15/12, at 30–32. She felt approximately forty percent better. *Id.* She saw a pain specialist and an orthopedic specialist over the next two years. An MRI of her shoulder three years after the accident was unremarkable. Although home exercises provided some relief, Ms. Dill stopped the regimen because "it started to become painful." *Id.* at 49. Although Ms. Dill denied that she was able to participate in sports, she was confronted with the fact that during the spring of her sophomore year in high school, she ran the one-hundred-yard dash, the girls' four-by-one-hundred relay, and participated in the long jump at the Ches–Mont track and field championships. *Id.* at 77–79. Despite her complaints of ongoing pain, she could not explain why she had not sought a second opinion from other medical professionals.

Ms. Dill had already received $30,000 in compensation for her injuries, a fact known by all three arbitrators. I see nothing that suggests that the panel's unanimous finding that no additional compensation was due was unjust, unconscionable, or inequitable. Hence, I would affirm on that basis.

CONCURRING AND DISSENTING OPINION BY SHOGAN, J.:

Although I appreciate the Majority's concern that objections to the appointment of an arbitrator should be timely raised, I cannot agree that waiver is appropriate under the facts of this case. The record contains no indication that Appellant participated in the arbitration hearing after learning that Attorney McNulty and his law partner had previously served as counsel for the tortfeasor in the related third party litigation. The record does indicate that Appellant's previous counsel had been disbarred and that the status of his records was uncertain. To impose upon a party, especially the Appellant under these facts, a duty to investigate the prior involvement of all attorneys and their partners or associates is, in my view, inconsistent with the impartiality and

transparency we all should expect in judicial and quasi-judicial proceedings. To the contrary, I would impose upon any attorney who serves as an arbitrator the duty to conduct a conflicts check of all prior and current representations and to disclose any conflicts regarding related representations prior to the commencement of the arbitration proceeding. Indeed, I am of the opinion that the current state of the law requires no less. Accordingly, I respectfully dissent.

As the record reflects, this matter stems from a 2003 automobile accident in which Appellant, then only eleven years old, was a passenger and suffered injuries. In 2005, Appellant filed suit against the driver of the other vehicle. The insurance carrier of the driver of the other vehicle referred the case to Attorney McNulty. It is undisputed that Attorney McNulty entered his appearance in the case and filed an answer and new matter on behalf of the driver of the other vehicle. Subsequently, Attorney McNulty withdrew his appearance and another attorney from Mr. McNulty's law firm defended the matter.[1] The case ultimately settled for the policy limits in 2008.

Thereafter, Appellant, represented by a different attorney who was not involved in the previous litigation, filed an underinsured motorist ("UIM") claim against Appellee State Farm, the insurance carrier for the vehicle in which she was a passenger. Under the terms of the State Farm insurance policy, the UIM claim proceeded to arbitration. State Farm chose Attorney McNulty as its arbitrator. After an arbitration hearing, the three-person arbitration panel rendered a decision in favor of State Farm. Appellant then filed the instant motion to strike and/or set aside the arbitration award. There is no direct evidence in the record that Appellant knew of Attorney McNulty's prior involvement in this matter up until this time. In fact, Appellant's motion to strike and/or set aside the arbitration award contains the following averment:

> 5. Elliott Tolan, [Appellant's] present counsel, was not involved in the litigation involving the tortfeasors and so was not aware of Mr. McNulty's, or members of his firm's, involvement in that case.

Motion to Strike and/or Set Aside Arbitration Award, 7/16/12, at 2.[2] It is further undisputed that Appellant's counsel in the previous litigation had been disbarred. Motion to Strike and/or Set Aside Arbitration Award Memorandum of Law, 7/16/12, at 5. The trial court denied Appellant's motion.

Chapter 73 of the Pennsylvania Judicial Code sets forth three types of arbitration: statutory arbitration (subchapter A—the Uniform Arbitration Act ("UAA")); common law arbitration (subchapter B); and judicial arbitration, which includes both compulsory arbitration and voluntary arbitration (subchapter C). 42 Pa.C.S. §§ 7301–7362.

---

1. The record reflects that Attorney McNulty transferred the case to Attorney Daniel Lewbart, his partner. The trial court's statement that Attorney McNulty transferred the case to another law firm after approximately one month is thus incorrect. *See* Trial Court Opinion, 3/7/13, at 1.

2. Appellant's counsel specifically avers that he became involved in the UIM arbitration "many years after the collision and the third

party liability case was over and most of the file and the entire underlying action was not provided to me." Verification of Elliott Tolan, 9/21/12, at ¶ 7. He further asserts that the Answer and New Matter filed by Attorney McNulty in the third party liability case "was obtained and reviewed for the first time from the old records at City Hall last Friday, September 21, 2012." *Id.* at ¶ 9.

The insurance policy at issue provides for arbitration under the Pennsylvania Arbitration Act of 1927. As noted by Appellee, the Act of 1927 was repealed and replaced by the Act of 1980, the UAA. However, parties may still agree to arbitrate disputes under the Act of 1927. *Nationwide Mutual Ins. Co. v. Heintz*, 804 A.2d 1209, 1214 (Pa.Super.2002). For purposes of our discussion on vacating awards, the differences between the acts are immaterial.

Section 7314 of the UAA addresses the vacating of an arbitration award by the court, in pertinent part, as follows:

§ 7314. **Vacating award by court**

**(a) General rule.**

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable[.]

42 Pa.C.S. § 7314(a)(1).

Section 7341 of the Judicial Code addresses common law arbitration as follows:

§ 7341. **Common law arbitration.**

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party **was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.**

42 Pa.C.S. § 7341 (emphasis added).

In interpreting this language in a case involving uninsured motorist coverage, our Court emphasized that the hearing to which a party is entitled must be a "full and fair" hearing. *Donegal Insurance Company v. Longo*, 415 Pa.Super. 628, 610 A.2d 466, 468 (1992) (citing *Abramovich v. Pennsylvania Liquor Control Board*, 490 Pa. 290, 416 A.2d 474, 476 (1980)). Furthermore, a hearing that comports with procedural due process "must be held before impartial and disinterested arbitrators." *Longo*, 610 A.2d at 468.

If parties are to be encouraged to arbitrate, arbitration proceedings must be conducted with the same degree of impartiality as the courts afford. Public policy requires, therefore, that arbitrators not only be completely impartial but also that they have no connection with the parties or the dispute involved which might give the appearance of their being otherwise. . . .

*Id.* (quoting 5 Am.Jur.2d Arbitration and Award, § 99).

Also, we have explained that "an irregularity refers to the process employed in reaching the result of the arbitration, not to the result itself." *Chervenak, Keane & Company, Inc. v. Hotel Rittenhouse Associates*, 328 Pa.Super. 357, 477 A.2d 482, 485 (1984) (citing *Press v. Maryland Casualty Company*, 227 Pa.Super. 537, 324 A.2d 403, 404 (1974)).

Section 7362(d) similarly addresses appeals in matters of judicial arbitration, as follows:

**(d) Appeal.**—Any party to a matter referred under this section shall have such rights of appeal, if any, as shall be prescribed by general rules. Where no right to appeal is prescribed by general rule, all parties shall be deemed to have waived any right to appeal which they might otherwise enjoy under the Constitution of Pennsylvania or otherwise in mutual consideration of an expeditious final disposition of the matter, but no such waiver shall apply if it is clearly shown that a party **was denied a hear-**

ing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa.C.S. § 7362(d).

Also relevant to our discussion is Pennsylvania Rule of Civil Procedure 1302, which addresses the appointment of the board of arbitrators in actions submitted to compulsory arbitration. Specifically, Rule 1302(e) provides as follows:

(e) A member of a board who would be disqualified for any reason that would disqualify a judge under the Code of Judicial Conduct **shall immediately withdraw** as an arbitrator.

Pa.R.C.P. 1302(e) (emphasis added). In addition, Canon 3 of the Code of Judicial Conduct expressly states, in pertinent part, the following:

**C. Disqualification.**

(1) Judges should disqualify themselves in a proceeding in which their impartiality might reasonably be questioned, including but not limited to instances where:

(a) they have a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding;

(b) they served as a lawyer in the matter in controversy, or a lawyer with whom they previously practiced law served during such association as a lawyer concerning the matter, or the judge or such lawyer has been a material witness concerning it[.]

Pennsylvania Code of Judicial Conduct, Canon 3(C)(1)(a) and (b). I cannot accept the trial court's position that a distinction should be made between compulsory and voluntary arbitration in the application of this disqualification standard. Trial Court Opinion, 3/7/13, at 4. Due process concerns are equally applicable.

Interestingly, the Majority of this panel insinuates that Appellant waived her ability to object to the composition of the arbitration panel by failing to object to Attorney McNulty's participation as an arbitrator prior to the arbitration hearing. The Majority contends that to find in favor of Appellant would require this Court to overrule the longstanding principles enunciated in *Longo, supra.* However, the following language from *Longo* illustrates that the prerequisite to waiver, in a similar circumstance, is participation in the arbitration hearing **after** learning of the grounds for objection:

A party **may** waive objection to the composition of the arbitration panel if **after learning of the grounds for objection that party nevertheless participates in the hearing and withholds objection until the panel renders a decision.** Here, however, Donegal did not learn of [the arbitrator's] relationship with the Longos until after the hearings had been concluded. When the relationship became known, Donegal objected immediately and in the only practical manner available to it. Having made its objection unsuccessfully, Donegal could properly await the panel's decision before proceeding in the Court of Common Pleas to vacate the award. The issue of [the arbitrator's] competency to serve as an arbitrator, therefore, has not been waived and is properly before this Court for appellate review.

*Longo,* 610 A.2d at 468 (emphasis added).

Here, the record contains no indication that Appellant participated in the arbitration hearing after learning of the grounds for objection. Indeed, the record is devoid of any evidence that Appellant became aware of the grounds for objecting to Attorney McNulty's participation as a member of the arbitration panel prior to the hearing, or that Appellant purposely withheld her objection until the arbitration panel rendered its decision. Rather, it is

my conclusion that the facts of the instant case are similar to those in *Longo*. Therefore, I believe that *Longo* does not require a different determination, nor is this Court required to overrule *Longo* in order to reverse the decision of the trial court in this matter.

Upon review of the record once again in this case, I remain firm in my conclusion that the selection of Attorney McNulty, who failed to disclose that he and his partner had represented the tortfeasor in the related third party litigation, as an arbitrator in this proceeding, affects the fairness of the hearing and is an irregularity requiring that the award be vacated. It matters not that Attorney McNulty alleges that he had no specific recollection of the prior matter. Attorney McNulty had taken a position adverse to Appellant and was privy to confidential information regarding the accident.

Additionally, the Majority appears to impose upon Appellant the duty to investigate the prior involvement of all attorneys and their law firm associations. I strongly disagree that the duty fell upon Appellant. To the contrary, I am of the opinion that the duty to conduct a conflicts review and disclose his prior involvement in the matter was upon Attorney McNulty as an arbitrator. Conflicts checks are part of the practice of law and should likewise be expected of any attorney who assumes the quasi-judicial role of arbitrator. For this reason, I would reverse the decision of the trial court and vacate the arbitration award. Accordingly, I must dissent.[3]

Judges ALLEN and LAZARUS join this Concurring and Dissenting Opinion.

---

**3.** In all other respects, I agree with the Majority. My review of the record reveals that Appellant failed to preserve her second issue on appeal.